RTP:NR
F. #2016R00174

**18 M 0471**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

SHEILA FRIEDMAN,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

C O M P L A I N T

(18, U.S.C. § 876 (c))

EASTERN DISTRICT OF NEW YORK, SS:

        JOSEPH MARCUS, being duly sworn, deposes and states that he is a Postal Inspector with the United States Postal Inspection Service, duly appointed according to law and acting as such.

        Upon information and belief, in or about and between 2011 and 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant SHEILA FRIEDMAN did knowingly deposit in a post office or authorized depository for mail matter, to be sent or delivered by the United States Postal Service or knowingly cause to be delivered by the United States Postal Service according to the direction thereon, any communication with or without a name or designating mark subscribed there to, addressed to any other person and containing a threat to injure the person of the addressee or another, to wit: envelopes containing powdery substances, animal feces and/or metal shavings.

        (Title 18, United States Code, Section 876 (c))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Postal Inspector with the United States Postal Inspection Service ("USPIS") and have been involved in the investigation of numerous cases involving criminal offenses involving use of the mails. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file and from reports of other law enforcement officers involved in the investigation.

The Defendant and Relevant Entities

2. Since in or about 2013, SHEILA FRIEDMAN has been a resident of Delray Beach, Florida.

3. At all times relevant to this Complaint, SHEILA FRIEDMAN owned, through various corporate entities, a property in West Hampton Dunes, New York (the "WHD Property"), which she regularly sought to rent to individuals for short-term vacation rentals. On or about July 18, 2001, FRIEDMAN obtained a Certificate of Occupancy from the Village of West Hampton Dunes for the WHD Property.

4. FRAS, LLC was a Delaware limited liability corporation incorporated in or about February 28, 2005. Tax records reflect that beginning in 2005, SHEILA FRIEDMAN was the majority of owner of FRAS LLC. On or about March 1, 2005, FRIEDMAN transferred ownership of the WHD Property to FRAS LLC. On or about June

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

14, 2016, FRIEDMAN, acting as FRAS LLC's managing member, transferred ownership of the WHD Property to Krystal Whaters, Inc. ("Krystal Whaters").[2]

5. Krystal Whaters was a New York corporation incorporated in or about April 21, 2016. Publicly available records from the New York Department of State reflect that SHEILA FRIEDMAN is the registered agent for Krystal Whaters and that the address associated with the WHD Property is also identified as the address for Krystal Whaters.

6. In or about June 2016, SHEILA FRIEDMAN opened a bank account with JPMorgan Chase Bank in Krystal Whaters' name (the "Krystal Whaters Account") and listed herself as the lone authorized signatory on the account. The business address for the Krystal Whaters Account was the WHD Property.

7. Ymolli Ltd. ("Ymolli") was a New York corporation incorporated on or about July 16, 2015. On or about December 12, 2015, SHEILA FRIEDMAN opened a bank account with JP Morgan Chase Bank in Ymolli's name (the "Ymolli Account"), identified herself as Ymolli's president and listed herself as the lone signatory on the Ymolli Account.

The Defendant's Pattern of Threats

8. SHEILA FRIEDMAN, together with others, repeatedly induced individuals to enter into short-term rental contracts for the WHD Property. In connection

---

[2] On or about June 6, 2016 – eight days before she transferred the WHD Property – SHEILA FRIEDMAN appeared before the Honorable Gair Betts in the Westhampton Dunes Court as a defendant in a civil proceeding relating to her failure to return a security deposit belonging to renters of the WHD Property. During that appearance, FRIEDMAN denied under oath being a member or owner of FRAS LLC and claimed no connection to FRAS LLC.

with these contracts, FRIEDMAN, or others acting at her direction, requested that the potential renters provide substantial security deposits.

9. As set forth below, SHEILA FRIEDMAN repeatedly refused to return the security deposits[3] by falsely claiming that renters had damaged the WHD Property or, alternatively, by providing no explanation at all.

10. Further, as set forth in greater detail below, multiple individuals who sought a judicial remedy to retrieve their lost funds were subject to threatening letters sent by SHEILA FRIEDMAN that placed the recipients in fear for their personal safety.

The Victims

Victim 1

11. In or about the summer of 2011, Victim 1 attempted to rent the WHD Property for a one-week period, employing the services of a real estate broker. Victim 1 communicated with an individual named "Marci Ginsburg," who purported to be the owner of the WHD Property and received two telephone numbers as contact numbers for "Ginsburg."

12. Victim 1 provided law enforcement agents with two telephone number associated with "Marci." Specifically, Victim 1 provided one telephone number ending in "6822" and another telephone number ending in "5882." Based on the investigation to date, I believe that the telephone numbers provided by Victim 1 were inaccurate and that the numbers were, in fact, a telephone number in "8622" (the "8622 Phone") and a telephone number ending in "5883" (the "5883 Phone.") Specifically, based on a review of law

---

[3] As identified below, in certain instances, renters lost substantially more money than their security deposit.

enforcement databases and publicly available information, the 8622 Phone has been and continues to be utilized by a real estate broker (the "Broker") who has acted as a representative for SHEILA FRIEDMAN. Further, the 5883 Phone has been subscribed to by FRIEDMAN and has been used by her since at least September 2010.

13.    On or about April 23, 2011, Victim 1 mailed a $2,500 check to FRAS, LLC to reserve the WHD Property for the agreed-upon week until Victim 1 received a proposed rental contract for the WHD Property. In a letter accompanying the check, Victim 1 requested that the check be held until Victim 1 had the opportunity to review and sign the proposed lease. Notwithstanding this request, Victim 1's check was cashed and deposited into a TD Bank account belonging to FRAS, LLC (the "FRAS Bank Account") on or about May 3, 2011.

14.    On or about May 19 and May 20, 2011, Victim 1 and Victim 1's spouse contacted "Marci" telephonically and requested the return of the $2,500 check as the proffered lease included terms that were not acceptable to them. "Marci" refused this request. The $2,500 deposit was never returned to Victim 1 and Victim 1 did not ultimately occupy the WHD Property.

15.    In or about June 2011, Victim 1 commenced a proceeding in Southampton Small Claims Court to obtain the return of the $2,500.[4] On or about August 22, 2011, Victim 1 received a hand-addressed envelope via the United States mail, bearing a West Palm Beach, Florida postmark and no return address. The envelope contained an

---

[4]    Victim 1 ultimately obtained a $2,500 judgment against FRAS LLC in November 2011 that has not been satisfied.

unidentified black powdery substance.  Fearing for her safety, Victim 1 called the local police department, who responded with its hazardous material team.

Victim 2

16.   In or about May 2015, Victim 2 signed a lease to rent the WHD Property for a one-week period in August 2015.  Victim 2 entered into a rental contract with Hi-Lite Corp.  Victim 2 mailed checks totaling $18,750 transmitted to "Hi-Lite Corp." at an address in Brooklyn, New York (the "Brooklyn Address").  On or about May 11, 2015, Victim 2's check was deposited into a TD bank account held in the name of Hi-Lite Corp. (the "Hi-Lite Account") at a bank branch location in Delray Beach, Florida.  Bank records reflect that SHEILA FRIEDMAN is the sole authorized signatory for the Hi-Lite Account.

17.   Before Victim 2 occupied the WHD Property, Victim 2, acting through counsel, attempted to negotiate a release from the lease.  When these negotiations failed, Victim 2 informed Hi-Lite Corp. that Victim 2 intended to occupy the WHD Property pursuant to the terms of the lease.

18.   Approximately five days before the lease term was to commence, Victim 2 was informed, via electronic mail that purported to come from "High-Lite," that Victim 2 would be arrested for trespass if Victim 2 and his guests attempted to occupy the WHD Property.  Accordingly, Victim 2 did not occupy the WHD Property.  Victim 2 was not refunded any portion of the $18,750 that he provided to Hi-Lite Corp.

19.   On or about September 25, 2015, Victim 2 and the Victim's spouse commenced a civil action in the Village Court of Westhampton Dunes against FRAS LLC, Hi-Lite Corp. and SHEILA FRIEDMAN.

20. On or about November 12, 2015, subsequent to the commencement of the litigation, Victim 2 received an envelope via United States mail containing what appeared to be rodent feces and metal shavings which placed Victim 2 in fear for Victim 2's personal safety. The return addressee was purportedly the attorney representing Victim 2 in Victim 2's litigation against FRIEDMAN.

21. On or about November 13, 2015, a package sent via United States mail to counsel for Victim 2 was erroneously delivered to a law firm located in the same building. The envelope appeared to contain rodent feces.

Victim 3

22. In or about May 2015, Victim 3 entered into a lease agreement with Hi-Lite Corp. to rent the WHD Property for a one-week period in late July 2015. In connection with this lease agreement, Victim 3 agreed to pay $15,000 in rent, $5,000 as a security deposit and $1,500 in expenses.

23. Subsequent to Victim 3's use of the WHD Property, Victim 3 received a letter, dated August 21, 2015, from Hi-Lite Corp. indicating that Victim 3's security deposit would not be refunded. In connection with this claim, Hi-Lite Corp. falsely claimed, inter alia, that Victim 3 had violated the term of the lease by: (1) permitting occupancy of the WHD Property by more individuals than permitted by the lease and (2) causing unspecified damages totaling $20,000.

24. On or about March 3, 2016, Victim 3 provided notice to the Village of West Hampton Dunes, Justice Court of Victim 3's intent to seek damages relating to Victim 3's rental of the WHD Property. On or about March 21, 2016, Victim 3's spouse received a letter via the United States mail that was addressed to Victim 3 and Victim 3's spouse. The

letter did not contain a return address. Fearing for her safety, Victim 3's spouse called the local police department and informed the responding officer that she believed that the letter had been sent by SHEILA FRIEDMAN. Victim 3's spouse indicated that she believed this to be the case because she understood that another individual involved in litigation with FRIEDMAN had received a similar letter. The spouse of Victim 3 opened the letter in the presence of a police officer. The letter contained a black powdery substance that appeared to be a mixture of rodent feces and metal shavings.

25. Victim 3 and his spouse subsequently sued SHEILA FRIEDMAN in Westhampton Dunes Village Justice Court seeking the return of the $5,000 security deposit. As noted above, on or about June 6, 2016, FRIEDMAN appeared in that case and denied any ownership interest in FRAS LLC or the WHD Property. She further claimed no relationship to Hi-Lite.

Victim 4

26. In or about September 2016, Victim 4 contacted in individual who identified herself as "Krys" regarding the rental of the WHD Property for a week in June 2017. Victim 4 contacted the individual on a telephone assigned a number ending in "8080" (the "8080 Phone"). Telephone records obtained from Sprint indicate that the 8080 Number was assigned to an individual who has a close familial relationship to SHEILA FRIEDMAN. The address associated with the 8080 Phone is SHEILA FRIEDMAN's home address in Delray, Florida.

27. On or about September 6, 2016, Victim 4 sent a "down payment" of $7,750 via the United States mail to "Krystal Whaters, Inc." to the Brooklyn Address and

accompanied it with a letter requesting that a rental contract be provided.[5] On or about September 15, 2016, the check was deposited into the Krystal Whaters Account maintained at JPMorgan Branch in Delray Beach, Florida. Bank records for the Krystal Whaters Account reflect that, in early September 2016, a debit card associated with the Krystal Whaters Account was used to make various purchases in Delray Beach, Florida. Additionally, deposit records for this time period for the Krystal Whaters Account reflect that checks made out to SHEILA FRIEDMAN were also repeatedly deposited into the Krystal Whaters Account.

28. On or about October 3, 2016, Victim 4 received, via United States mail, a letter requesting that the balance of the rental fee (an additional $7,750) be paid by December 1, 2016. Victim 4 did not receive a copy of the requested rental contract and the return address on letter was the Brooklyn Address associated with Hi-Lite Corp.

29. After identifying SHEILA FRIEDMAN as the proprietor of Krystal Whaters on a website, Victim 4 sent certified letters to FRIEDMAN at the WDH Property and the Brooklyn Address requesting the return of the down payment.

30. Victim 4 received no response to this request and has not received any return of the $7,750 paid on September 6, 2016.

Victim 5

31. On or about March 27, 2017, Victim 5 entered into a lease agreement to occupy the WHD Property from late May through early September 2017 (with the exception

---

[5] Victim 4 has reviewed a copy of this check and confirmed that the "memo line" on the check was altered. Victim 4 confirmed that Victim 4 had written "Dep. For West Hampton Dunes NY Rental 6/17/2017" and noted that "Dep." had been blacked out and the "partial Pymt no Refunds" had been written in.

of two weeks during that period). In advance of occupying the WHD Property, Victim 5 wired approximately $117,000 to a management company that identified itself as the representative of the owner of the WHD Property. In communications with Victim 5, the management company identified the owner of the WHD Property as "Angie." On or about April 3, 2017, two checks totaling $118,500 were deposited into the Krystal Whaters Account by the management company with memo lines indicating that the checks were in relation to Victim 5's rental of the WHD Property for "Rent + $2K Pet Fee" and for "Security Deposit."

32. In connection with the investigation, law enforcement agents have obtained copies of text messages exchanged between the management company and the individual who identified herself as "Angie." "Angie" communicated with the management company using the 5883 Phone belonging to SHEILA FRIEDMAN.

33. On or about May 27, 2017, Victim 5 received a facsimile that purported to be from Krystal Whaters and falsely claimed that Victim 5 had violated the terms of her lease for the WHD Property. Shortly thereafter, Victim 5 was locked out of the WHD Property and did not occupy the WHD Property subsequent to that date.

34. In or about June 2017, Victim 5 commenced a lawsuit against SHEILA FRIEDMAN, Krystal Whaters and Ymolli in Suffolk County Supreme Court and obtained a temporary restraining order on certain assets belonging to those individuals and entities. New York State court records reflect that FRIEDMAN was served at a location in Delray Beach, Florida on or about September 6, 2017.

35. On or about September 13, 2017, Victim 5 received, via United States mail, an envelope at Victim 5's home address in New York City. The envelope identified a

return address in East Hampton, New York. The sole contents of the envelope were materials that appeared to be metal shavings and rodent feces. Victim 5 perceived this envelope and its contents to be a threat to Victim 5's safety. Victim 5 contacted the New York City Police Department.

36.  I have queried United States Postal Service databases and have determined that the stamp on the envelope was purchased in Delray Beach, Florida with a JPMorgan Chase debit card issued to Ymolli. As noted above, SHEILA FRIEDMAN is the sole authorized signatory of the Ymolli Account.

WHEREFORE, your deponent respectfully requests that the defendant SHEILA FRIEDMAN be dealt with according to law. I further request that this affidavit and the arrest warrant be filed under seal as disclosure of this application would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, change patterns of behavior, notify confederates, and flee from or evade prosecution.

_____
JOSEPH MARCUS
Postal Inspector
United States Postal Inspection Service

Sworn to before me this
24th day of Month, Year

_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK